## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBERT W. RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14–cv-0101(KBJ) |
| | ) | |
| DEPARTMENT OF DEFENSE, | ) | |
| | ) | |
| Defendant. | ) | |
|  | ) | |

## <u>MEMORANDUM OPINION</u>

Retired Colonel Robert W. Rodriguez ("Rodriguez" or "Plaintiff") is a former U.S. Army officer who unsuccessfully petitioned the Army Board for Correction of Military Records ("ABCMR") for relief under the Military Whistleblower Protection Act ("MPWA"), 10 U.S.C. § 1034, and then sought records related to the procedures that the Department of Defense ("DOD" or "Defendant") applied to his subsequent appeal of the ABCMR's denial determination. To this end, in October of 2013, Rodriguez sent DOD two letters under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requesting documents that generally consisted of: (1) the record on appeal, and "any and all documentation" that was "related in any way" to the administrative review process that was conducted with respect to his appeal, and (2) "any and all records" regarding DOD's decision to confer upon a certain official— Pasquale M. Tamburrino—the "decisional authority" to handle MPWA appeals. (Compl., ECF No. 1, ¶¶ 6, 8.) Rodriguez filed the instant FOIA lawsuit on January 26, 2014, to contest DOD's denial of his request for expedited processing and failure to

produce any documents in response to his two FOIA requests (*see id.* ¶¶ 22, 26), after which DOD released a redacted subset of the records that Rodriguez requested.

Before this Court at present are the parties' cross-motions for summary judgment.  (*See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 18; Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 20.)  Because DOD has now produced all of the records that it deems responsive to Rodriguez's request, the crux of parties' dispute is whether DOD's search for records was adequate, and also whether the agency was justified in employing FOIA Exemptions 5 and 6 to redact certain information from two of the responsive documents that it located in the search.  (*See* Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), ECF No. 18-1, at 9–20; Pl.'s Mem. in Opp'n to Def.'s Mot. & in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem."), ECF No. 19, at 17–25.)[1]  Upon consideration of the parties' submissions, the relevant authorities, and the record as a whole, this Court agrees with Rodriguez that DOD's search for records was inadequate insofar as the agency unreasonably narrowed the search to the Office of Legal Policy, and that the agency has not provided a sufficient description of its methodology in conducting the search.  As a result, Defendant must conduct the search anew, and the Court will decline to address the applicability of the FOIA exemptions at this time.  Accordingly, and as explained below, DOD's motion for summary judgment will be **DENIED** in full, and Rodriguez's cross-motion for summary judgment will be **GRANTED IN PART and DENIED IN PART**.  A separate order consistent with the memorandum opinion will follow.

---

[1] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

## I.      BACKGROUND

### A.      Factual Background

The MWPA is a statute designed "to provide a degree of protection [from retaliation] to military personnel who report information on improper or illegal activities by other military personnel." *Hisgen v. Fanning*, No. 14-1204 (RMC), 2016 WL 5108011, at *5 (D.D.C. Sept. 20, 2016) (internal quotation marks and citation omitted).  Generally speaking, an aggrieved veteran may complain of retaliatory conduct to the Inspector General ("IG"), *see* 10 U.S.C. § 1034(c), and if the IG's investigation substantiates the allegation, the veteran can petition the ABCMR "to correct an error or remove an injustice" from his or her military personnel record, *id.* § 1552(a)(1), or seek a "recommend[ation] to the Secretary of the Army that disciplinary or administrative action be taken against" those responsible for the reprisal, 32 C.F.R. § 581.3(c)(2)(ii).  Apparently, Rodriguez submitted such a petition to the ABCMR in October of 2009, and in 2010, his request for relief was substantially denied.  (*See* Administrative Record Index, Ex. 2 to Def.'s Mot., ECF No. 18-4, at 6, 8; *see also* Compl. ¶ 3.)  Rodriguez then launched an administrative appeal from the ABCMR's denial, and Pasquale Tamburrino—the then-Chief of Staff of DOD's Office of the Under Secretary of Defense, Personnel and Readiness ("OUSD(P&R)")— reviewed his appeal in April of 2013, affirming the agency's denial.  (*See* Compl. ¶ 3; *see also* Def.'s Mem. at 1.)

Rodriguez then sought to attack the ACBMR's denial of relief on two fronts. First, on May 31, 2013, Rodriguez filed a petition for judicial review of that agency decision in the D.C. Circuit.  (*See* Def.'s Stmt. of Material Facts not in Genuine Dispute ("Def.'s Stmt."), ECF No. 18-2, ¶ 1; Pl.'s Stmt. of Material Facts not in Genuine

Dispute ("Pl.'s Stmt."), ECF No. 19-1, ¶ 1.)  Second, on October 8, 2013, Rodriguez

filed two FOIA request letters with DOD's FOIA Office, seeking records related to his

administrative appeal.  (*See* Def.'s Stmt. ¶ 2; Pl.'s Stmt. ¶ 2.)

One of Rodriguez's FOIA requests, numbered 14-F-0013, generally sought "any

and all information related to 'materials'" that Rodriguez had "submitted in [the

MWPA] appeal" (FOIA Request 14-F-0013, Compl. Ex. 1, ECF No. 1-1, at 2 (also

referred herein as "the first FOIA request")), and further identified two "particular" sets

of records:  (1) all materials that Rodriguez had submitted for his MWPA appeal "on

September 28, 2013, and October 22, 2012, respectively, as well as the prior reviews of

the [ABCMR]" (*id.*); and (2) "any and all documentation, including electronic

correspondence, related in any way to . . . Tamburrino's examin[ation and] review of

this evidentiary record" (*id.* (alteration in original)).  Rodriguez's other FOIA request,

numbered 14-F-0014, sought the expedited processing and production of "any and all

information" regarding the purported designation of the Chief of Staff of OUSD(P&R)

as the "decisional authority to review MWPA appeals, on behalf of the Secretary of

[D]efense, by the Acting Under Secretary of Defense (P&R), on December 14, 2012."

(FOIA Request 14-F-0014, Compl. Ex. 2, ECF No. 1-2, at 2 (also referred herein as "the

second FOIA request")).)  Both request letters sought review and production on an

expedited basis, and on October 21, 2013, DOD denied Rodriguez's request for

expedited treatment on the grounds that Rodriguez had failed to demonstrate any basis

for his allegation that the document requests implicated a "loss of substantial due

process rights."  (Def.'s Stmt. ¶ 6; *see also* Pl.'s Stmt. ¶ 6.)

The agency then undertook to process Rodriguez's two FOIA requests in the ordinary course.  Notably, on January 13, 2014, DOD filed a Certified Index of Record ("Certified Record") in Rodriguez's then-pending D.C. Circuit appeal—a filing that, in the agency's view, simultaneously "encompassed all or nearly all documents responsive to [Rodriguez's] FOIA requests," and as a result, the agency merely mailed Rodriguez a hard copy of the Certified Record in satisfaction of its duty to respond to the FOIA requests.  (Def.'s Stmt. ¶ 9.)  However, when Rodriguez "indicated that he thought there were additional documents responsive to his request[,]" the agency "agreed to continue processing [Rodriguez's] FOIA requests to completion[.]"  (*Id.*)

The entire search for records was conducted by Lieutenant Colonel Ryan D. Oakley ("Lt. Col. Oakley"), an official in OUSD(P&R)'s Office of Legal Policy.  (*See* Def.'s Mem. at 10–11.)  DOD maintains that Lt. Col. Oakley is "a United States Air Force Judge Advocate," who is also "the Deputy Director of Legal Policy . . . tasked to respond to FOIA request for records maintained in the [Office of Legal Policy] OUSD(P&R)."  (Def.'s Stmt. ¶ 19.)  According to the agency, Lt. Col. Oakley was uniquely positioned to conduct the search for records responsive to Rodriguez's FOIA requests because Oakley "had prepared all written correspondence related to [Rodriguez's] military whistleblower reprisal appeal and provided them" to Tamburrino, including "all supporting materials provided in [the] appeal . . . as well as the prior decisional documents of the [ACBMR]."  (Def.'s Stmt. ¶ 22.)  Moreover, "Lt. Col. Oakley personally provided all documents submitted by [Rodriguez's] counsel (along with a correspondence package his office prepared) to the designated decisional authority for review" in the first instance.  (*Id.* ¶ 23.)  What is more, according to the

agency, "[t]he Office of Legal Policy retains physical and electronic records of documentation relating to appeals filed under" the MWPA, and that "[a]ll official correspondence and records are maintained in filing cabinets located in the office and computer/electronic files located on the Legal Policy share drive." (*Id.* ¶ 26; *see also id.* (asserting that "[a]ll responsive records are maintained, sorted, and are accessible only be personnel assigned to the OUSD(P&R) Office of Legal Policy").) Indeed, DOD contends that even before Rodriguez filed his FOIA requests, Oakley had already started to search the records of the Office of Legal Policy for similar documents in response to an internal request that DOD counsel made for records pertaining to the D.C. Circuit case. (*See id.* ¶ 25; *see also* May 19, 2016, Hr'g Tr., ECF No. 26, at 10–11.)

Lt. Col. Oakley avers that he "located all responsive records through a manual search of physical office files in the OUSD(P&R) Office of Legal Policy, and a search of [that office's] electronic files (which contained scanned copies of the same records, as well as correspondence prepared by the Office of Legal Policy in response to [Rodriguez's] appeal)." (Def.'s Stmt. ¶ 26; *see also* Decl. of Ryan D. Oakley ("Oakley Decl."), Ex. 1 to Def.'s Mot., ECF No. 18-3, ¶ 4.) Oakley also performed two e-mail searches of the individual email accounts of the Deputy Director of the Office of Legal Policy (himself) and the Director "using the key terms 'LTC Rodriguez,' 'Military Whistleblower Reprisal,' 'MWPA,' and 'Appeal'" (Oakley Decl. ¶ 8), but apparently, "[n]o responsive email records were located" (*id.*).

The scope of the search that Lt. Col. Oakley conducted regarding Rodriguez's two FOIA requests is generally depicted in the following diagram of the relevant agency sub-parts, and so, too, are the key facts that frame the current dispute:



Lt. Col. Oakley's search of physical and electronic records within the Office of Legal Policy initially yielded the following categories of documents responsive to Rodriguez's two FOIA requests (totaling 1,963 pages):  (1) "records relating to the designation of a successor for purposes of oversight, review and appeal duties on military whistleblower appeals;" (2) the supporting documents that Tamburrino had allegedly considered before reaching his decision related to Rodriguez's administrative appeal and that had become part of the Certified Record in the D.C. Circuit case; and (3) correspondence from Tamburrino to Rodriguez's counsel in response to a letter counsel had sent.  (Oakley Decl. ¶ 5; *see also* Def.'s Mem. at 2.)  In response to further

requests for information, DOD released two additional sets of documents. First, on July 18, 2014, DOD released "two standard OUSD(P&R) staff coordination sheets" that usually accompany official correspondence (Def.'s Stmt. ¶¶ 12, 28; *see also* Pl.'s Stmt. ¶ 12). Prior to releasing the coordination sheets, DOD redacted an agency counsel's name and legal advice from these records. (*See* Vaughn Index, Ex. 6 to Def.'s Mot., ECF No. 18-8, at 1.) Second, on September 11, 2014, DOD released a 43-page "Staff Action Control and Coordination Portal (SACCP) packet" (Def.'s Stmt. ¶ 14; *see also* Pl.'s Stmt. ¶ 14), which Lt. Col. Oakley allegedly located in response to Plaintiff's second FOIA request (14-F-0014), and which contained an action memo that designated the Chief of Staff as the decisional authority in MWPA appeals and related documentation (*see* Def.'s Mem. at 12–14).

## B.     Procedural History

On January 26, 2014, Rodriguez filed the instant complaint challenging DOD's denial of expedited processing and seeking disclosure of all responsive documents. (*See generally* Compl.) On April 22, 2014, this Court granted the parties' joint motion to stay the case pending further releases and the resolution of a second administrative review that the agency agreed to undertake in settlement of the D.C. Circuit appeal. (*See* Order, ECF No. 10.)[2] DOD affirmed the denial of Rodriguez's requested relief (once again) on March 6, 2015. (*See* Joint Status Report, ECF No. 17, at 2.)

---

[2] The Court stayed this matter at the parties' request because Rodriguez dismissed his D.C. Circuit appeal voluntarily, pursuant to a settlement that required DOD to conduct a second substantive review of the ABCMR's denial of relief. (*See* Def.'s Opp'n to Pl.'s Mot. & Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), ECF No. 21, at 10.) As noted, that endeavor ultimately reached the same outcome as Tamburrino's review. (*See* March 6, 2015 Decision of the Chief of Staff OUSD(P&R), Ex. E to Def.'s Reply, ECF No. 22-5, at 6–10 (sustaining the ABCMR decision).)

The parties then proceeded with the instant FOIA case and filed cross-motions for summary judgment in this Court.  (*See* Def.'s Mot. for Summ. J., ECF No. 18; Pl.'s Mot. for Summ. J., ECF No. 20.)  Defendant's motion argues that DOD conducted an adequate and reasonable search for records responsive to Plaintiff's FOIA requests because the Office of Legal Policy was the office responsible for preparing and maintaining all of the documents that the Chief of Staff of OUSD(P&R) reviews with respect to MWPA appeals, which were the kinds of documents Rodriguez requested. (*See* Def.'s Mem. at 10.)  Furthermore, Lt. Col. Oakley himself had compiled all of the actual documents that Tamburrino reviewed in Rodriguez's MWPA appeal, and had also prepared the action memo that designated Tamburrino (the then-Chief of Staff for the Under Secretary (P&R)) as the decisional authority in these administrative appeals. (*See id.* at 10–11.)  DOD's motion further argues that the agency released all of the documents that are responsive to both of Rodriguez's FOIA requests, and that the redacted information either was pre-decisional, privileged advice protected under Exemption 5 (*see id.* at 14–18), or was private information (e.g., attorneys' names) that was properly withheld pursuant to Exemption 6 (*see id*. at 18).  Lastly, DOD claims that it "carefully examined the documents" for non-exempt information and released all reasonably segregable material.  (*Id.* at 21.)

Rodriguez's cross-motion for summary judgment argues that DOD did not conduct a reasonable search under the FOIA, because the scope of the search was unreasonably narrowed to the Office of Legal Policy and did not include such obvious locations as the Office of the Chief of Staff, the servers of the Army Review Boards Agency, or the Office of General Counsel.  (*See* Pl.'s Mem. at 11–13, 17–19.)

Rodriguez also alleges that Lt. Col. Oakley's search method was deficient because the search terms he used were "not reasonably calculated to elicit [responsive] electronic documents" (*id.* at 18), and because no independent search was conducted for records responsive to the first FOIA request at all; instead, the agency merely responded by forwarding the documents that had previously been pulled for the Certified Record that was compiled in the D.C. Circuit case (*see id.* at 19).  Rodriguez further challenges DOD's invocation of Exemption 5, arguing that the redacted coordination sheets are neither predecisional nor deliberative (*see id.* at 20–22), or, alternatively, that there is not enough information on the record "for this Court to summarily agree with DoD" that the redacted comments involve predecisional advice protected under Exemption 5 (*id*. at 20–21).  Similarly, Rodriguez contends that Exemption 6 is inapplicable here because the public interest involved—dispelling or proving the appearance of improper delegation of authority by an unauthorized low-ranking official—outweighs the minimal privacy interest that may exist in the withholding of the attorney's name.  (*See id*. at 24–25.)

The parties' cross-motions have been fully briefed (*see* Def.'s Reply; Pl.'s Reply Mem. in Supp. of Pl.'s Mot. ("Pl.'s Reply"), ECF No. 22), and are now ripe for this Court's consideration.

## II.   LEGAL STANDARD

### A. FOIA's Adequate-Search Requirement And Established Exemptions

"An agency has an obligation under FOIA to conduct an adequate search for responsive records."  *Edelman v. S.E.C.*, 172 F. Supp. 3d 133, 144 (D.D.C. 2016).  Generally, "a FOIA requester may challenge the adequacy of the agency's search for

responsive records, the adequacy of the agency's application of FOIA exemptions to his or her request, or both." *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015). It is axiomatic that "[a]n inadequate search for records constitutes an improper withholding under FOIA." *Schoenman v. F.B.I.*, 764 F. Supp. 2d 40, 45 (D.D.C. 2011). Thus, when challenged, the agency bears the burden of demonstrating "beyond material doubt" that its search was adequate. *Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 35 (D.D.C. 2013) (internal quotation marks and citation omitted), *aff'd*, 806 F.3d 568 (D.C. Cir. 2015). A court assesses the adequacy of a federal agency's search for responsive records to a FOIA request by applying a reasonableness test, *see Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 27 (D.C. Cir. 1998), and the reasonableness of a FOIA search is generally determined by evaluating the methods used to carry out the search, not by examining the search results, *see Iturralde v. Comptroller of the Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003).

Although the records that an agency locates in response to an adequate search for records ordinarily must be produced, the FOIA authorizes agencies to withhold certain documents and information; namely, those that satisfy the requirements of any of the nine statutory exemptions. *See Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011). As relevant here, Exemptions 5 and 6 permit agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[,]" 5 U.S.C. § 552(b)(5), as well as "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[,]" *id.* § 552(b)(6). Stated simply, Exemption 5 "encompass[es] the protections traditionally afforded certain documents

pursuant to evidentiary privileges in the civil discovery context[,]" such as the attorney-client privilege, the attorney work-product privilege, and the deliberative process privilege ("sometimes called the 'executive' or 'governmental' privilege"). *Taxation with Representation Fund v. I.R.S.*, 646 F.2d 666, 676–77 (D.C. Cir. 1981). And Exemption 6 entails "a balancing of [an] individual's right of privacy" on the one hand, and "the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny" on the other. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976) (internal quotation marks and citation omitted).

### B.    Motions For Summary Judgment In FOIA Cases

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). A district court deciding a motion for summary judgment in a FOIA case must review the record *de novo*, and has the authority "to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). "In reviewing the agency action, the Court must analyze the facts and inferences in the light most favorable to the FOIA requester." *Unrow Human Rights Impact Litig. Clinic v. U.S. Dep't of State*, 134 F. Supp. 3d 263, 271 (D.D.C. 2015). Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment only when the pleadings, materials on file, and affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, "for an agency to prevail on summary judgment, it must prove that its search was reasonable[,]" and "for a plaintiff to prevail, there must

be no genuine issue regarding the fact that the agency defaulted in its search obligations." *Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 98 (D.D.C. 2013).

To demonstrate that a search for documents was reasonable and that summary judgment should be granted in the government's favor, a federal agency may submit "reasonably detailed" affidavits or declarations that describe the search performed. *Schoenman*, 764 F. Supp. 2d at 45. The affidavits or declarations, which may be submitted by an individual who either participated in the search or coordinated the search, "are accorded a presumption of good faith[.]" *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). To satisfy its FOIA obligations, an agency need only adequately describe the scope and methods of its searches, which can reasonably be expected to uncover the records sought, and demonstrate that the places most likely to contain responsive materials were searched. *See Davidson v. E.P.A.*, 121 F. Supp. 2d 38, 39 (D.D.C. 2000). At minimum, the affidavits must specify "what records were searched, by whom, and through what process." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). "Once an agency has made a *prima facie* showing of adequacy, the burden shifts to the plaintiff to provide countervailing evidence . . . sufficient to raise substantial doubt concerning the adequacy of the agency's search." *Schoenman*, 764 F. Supp. 2d at 46 (internal quotation marks and citations omitted).

## III.   ANALYSIS

As explained above, Rodriguez has challenged both the adequacy of DOD's search and the purported applicability of FOIA Exemptions 5 and 6 to justify the redactions in the two coordination sheets that DOD produced. For the following reasons, this Court concludes that DOD has failed to demonstrate that it conducted an

adequate search for records in response to Plaintiff's two FOIA requests, and thus, the agency's search must be redone.  *See, e.g.*, *Conservation Force*, 979 F. Supp. 2d at 103. Consequently, the Court will not address the parties' additional arguments regarding the applicability of Exemptions 5 and 6, and will allow any such issues to be raised again once a new search has been conducted.

> **A.     Under The Circumstances Presented Here, It Was Not Reasonable For DOD To Limit Its Search To The Office Of Legal Policy**

An agency must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," and it "cannot limit its search to only one record system if there are others that are likely to turn up the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Here, as explained above, DOD identified a single office as the place in which documents responsive to Rodriguez's two FOIA requests were likely to be located, and then assigned "a person in that office intimately familiar with those documents" to "collect[] the documents responsive to Plaintiff's request." (Def.'s Mem. at 13.)  DOD has provided a host of reasons for searching for responsive records within the Office of Legal Policy, including the fact that the Office of Legal Policy "is [the office] responsible for packaging MWPA appeals and presenting them to the Chief of Staff" and that "[t]he Office of Legal Policy retains physical and electronic records of documentation relating to appeals filed under [MWPA.]"  (*Id*. at 10.)  What the agency has *not* done, however, is explain clearly why its search was *limited* to the Office of Legal Policy, when the FOIA requests at issue plainly encompassed records that could have been located in other subdivisions of DOD.

There is no question that the records Rodriguez requested transcended those that were a part of Rodriguez's MWPA appeal itself, and included records that reflected the process that the Chief of Staff undertook to reach his decision with respect to that appeal, as explained above.  For example, Rodriguez's first FOIA request sought "any and all documentation, including electronic correspondence, *related in any way* to . . . Tamburrino's examin[ation and] review of this evidentiary record" (FOIA Request 14-F-0013, at 2 (emphasis added))—a request that is unquestionably broader than merely the subset of documents that Tamburrino himself reviewed to reach his decision.  Thus, at a minimum, this FOIA request requires a search of potentially responsive records from within the office in which Tamburrino sat (i.e., the Office of the Chief of Staff).  *See Defs. of Wildlife v. U.S. Dep't of Agric.*, 311 F. Supp. 2d 44, 55 (D.D.C. 2004).

Similarly, Rodriguez's second FOIA request was squarely aimed at securing documents related to DOD's determination that the Chief of Staff would be the decisional authority with respect to these types of appeals.  (*See* FOIA Request 14-F-0014, at 2.)  The fact that the Office of Legal Policy *recommended* that decision (*see* Def.'s Mem. at 11–12), does not necessarily mean that it alone possessed documents regarding how that determination was made, and this is especially so when the Under Secretary of Defense was the broader agency unit with the power to affect the delegation of appellate-review authority from the Secretary of Defense to the Chief of Staff OUSD(P&R) (*see* Def.'s Reply at 9).

Thus, although it is clear beyond cavil that "an agency . . . has a duty to construe a FOIA request liberally[,]" *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), and that it must "select the interpretation that would

likely yield the greatest number of responsive documents[,]" *Conservation Force*, 979 F. Supp. 2d at 102, DOD is hard pressed to establish that it has fulfilled these obligations here, given the structure of the agency's offices (*see supra* Part I.A) and the nature of the requests at issue.  *See Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985) ("[T]he agency must be careful not to read the request so strictly that the requester is denied information the agency well knows exists[.]").  Under the circumstances presented here, it was manifestly unreasonable for DOD to decide to respond to Rodriguez's two FOIA requests by looking no further than files maintained by the Office of Legal Policy, and even more significant, failing to search *Tamburrino's own office* (including his email database), which Plaintiff specifically noted was the likely place where all of the records regarding Tamburrino's review would be located. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) ("It is well-settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden."); *Nat'l Sec. Counselors v. C.I.A.*, 849 F. Supp. 2d 6, 12 (D.D.C. 2012) ("[A]n agency is not permitted to deny requesters information by narrowing the scope of its search to exclude relevant information."); *see, e.g.*, *Kowalczyk v. U.S. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996) (finding that a search of "the office to which the request was sent or any office(s) named in the request" is adequate).  This Court simply cannot fathom any legitimate reason for the location limitation that DOD imposed with respect to Rodriguez's two FOIA requests, and thus, it is difficult, if not impossible, to conceive of the agency's search for records as a reasonable one.

DOD's primary response to this line of analysis is the fact that Rodriguez penned an email to DOD regarding aspects of his initial FOIA request (*see* E-mail from Plaintiff's counsel to Curtis Gibbens, Oct. 18, 2013 ("Pl.'s E-mail"), Compl. Ex. 5, ECF No. 1-5, at 12–15), and that this email could be interpreted as narrowing the scope of the documents he was requesting.  (*See* Def.'s Mem. at 13; May 19, 2016, Hr'g Tr. at 6–10.)  This Court agrees that Rodriguez's email can be reasonably construed as characterizing his prior request in a narrow fashion.  (*See, e.g.*, Pl.'s E-mail at 13 (stating that "we purposely are not asking for production of the entire administrative record itself, but rather documents relating to . . . Tamburrino's 'examin[ation and] review of [the] evidentiary record'").)  But to view this communication as necessarily disclaiming an interest in documents relating to Tamburrino's review—and thereby foregoing any search of Tamburrino's own records—when the email plainly confirms Rodriguez's interest in that very subset of records "is manifestly inconsistent with the text and spirit of Plaintiff's inquiry."  *Conservation Force*, 979 F. Supp. 2d at 101.  Moreover and in any event, the clear thrust of the communication was the *timing* of the production, i.e., the rate at which the requests were to be processed, and there is no indication that Rodriguez was addressing the scope of the records requested, much less narrowing his initial document request.  (*See, e.g.*, Pl.'s E-mail at 13 (calling the scope of the FOIA requests "narrow" solely in response to the agency's contention that his requests "require[d] time-consuming searches").)

All things considered, then, this Court easily finds that DOD unreasonably narrowed its interpretation of Rodriguez's FOIA requests and has failed to justify the limited scope of its search.  *See, e.g.*, *Oglesby*, 920 F.2d at 68 (finding that the agency

did not show an adequate search where its affidavit did not explain why the specific place searched was "the only possible place that responsive records [were] likely to be located"); *Conservation Force*, 979 F. Supp. 2d at 102–03 (holding that the agency "should have undertaken a search for the 'entire' administrative record to satisfy its FOIA obligation, notwithstanding any more limited construction that could have been applied to the request"); *Hemenway*, 601 F. Supp. at 1005 (finding that the agency's duty to construe FOIA requests liberally compels a broad interpretation of the records requested, even if a narrower reading is also reasonable).

### B.   DOD Has Not Demonstrated That The Methods It Used To Conduct The Search Were Reasonably Calculated To Unearth All Responsive Records

Even if one accepts the agency's contention that it was reasonable to limit its search to the Office of Legal Counsel, DOD's description of the search methods it utilized falls substantially short of demonstrating that the agency conducted an adequate search within that location.  If an agency submits affidavits or declarations to explain the contours of its search, the proffered averments must be "reasonably detailed[,]" *Schoenman*, 764 F. Supp. 2d at 45, and must adequately describe the scope and methods used, *see Davidson*, 121 F. Supp. 2d at 39.  At a bare minimum, the agency's affidavits need to specify "what records were searched, by whom, and through what process." *Steinberg*, 23 F.3d at 552.

The affidavit that DOD has presented in this case to support its 'adequate search' contentions falls far short of this mark.  As noted above, Lt. Col. Oakley, the Deputy Director of the Office of Legal Policy of OUSD(P&R), was the officer in charge of the search and is the affiant upon whose declaration DOD relies.  (*See* Oakley Decl. ¶ 3 ("The purpose of this declaration is to explain the search conducted for documents

responsive to the Plaintiff's two FOIA requests[.]").)  Lt. Col. Oakley's affidavit describes in detail his connection to the records at issue; for example, he avers that he "personally prepared all written correspondence related to [Rodriguez's] military whistleblower reprisal appeal" and "provided the Chief of Staff for the Under Secretary of Defense (Personnel and Readiness)" with "all supporting materials provided in [Rodriguez's] appeal . . . as well as the prior decisional documents of the ABCMR." (*Id.* ¶ 6.)  The affidavit also details the results of the search Lt. Col. Oakley conducted. (*See, e.g.*, *id.* ¶ 5 ("Our search for records responding to the Plaintiff's FOIA requests located approximately 22 responsive documents (which contain multiple supporting exhibits) totaling over 2,000 pages in the administrative record.").)  However, with respect to the specific process Lt. Col. Oakley employed to locate records, the affidavit asserts only that Oakley "located all responsive records through a manual search of physical office files and a search of electronic files" (*id.* ¶ 4), and generally discusses the various steps that he undertook to gather the records DOD produced—at least two of which occurred prior to Rodriguez's submission of the FOIA request letters of October 8, 2013.

First, it appears that Oakley had access to the various supporting documents that comprised the record on appeal with respect to Rodriguez's administrative appeal in late 2012, including "the decisional documents of the ABCMR," and that he provided those documents to Tamburrino for review with respect to that appeal.  (*Id.* ¶ 6.)[3]  On

---

[3] This set of materials appears to have included the memoranda of law that Rodriguez's counsel submitted to the ABCMR, with exhibits, as well as Rodriguez's request for reconsideration of ABCMR's denial decision.  (*See* Oakley Decl. ¶ 5.)  It also seems as though these record materials comprise "[t]he vast majority of the responsive records" that ultimately were produced to Rodriguez in response to his FOIA request.  (*Id.*)

August 15, 2013, after Tamburrino denied the administrative appeal and Rodriguez sought review in the D.C. Circuit (but before he made the FOIA requests), Oakley "personally conducted a search of the Office of Legal Policy's files and electronic share drive files" in response to a request by the U.S. Army Litigation Division, which, presumably, was handling the D.C. Circuit matter.  (*Id.* ¶ 7.)  Then, on October 19, 2013—approximately two weeks after DOD received the two FOIA requests from Rodriguez—Oakley further searched "the individual email records of the Director and Deputy Director of the Office of Legal Policy . . . . at the request of the DoD FOIA office."  (*Id.* ¶ 8.)  Oakley repeated this email search in the summer of 2014 (*see id.*), and he also located two other specific sets of responsive documents:  "copies of the P&R coordination sheets" that were contained in the staff packages related to Rodriguez's administrative appeal (*id.* ¶ 9), and "all supporting documents related to the designation of successor for purposes of oversight, review, and appeal duties on military whistleblower appeals, which were physically located in the Office of Legal Policy" (*id.* ¶ 10).[4]

This Court has no reason to doubt the affidavit's contentions regarding what was done with respect to the documents DOD produced in response to Rodriguez's two FOIA requests, nor does it question Oakley's representation that he "personally conducted and coordinated this search[.]"  (*Id.* ¶ 4.)  But the affidavit describes a FOIA search methodology that was far from well-coordinated.  Among the many defects is the fact that Lt. Col. Oakley apparently failed to do a fresh, comprehensive search for

---

[4] Apparently, the designation-of-successor documents "included the complete 43 page packet 'Designation of Successor for Purposes of Oversight, Review, and Appeal Duties on Military Whistleblower Appeals and Joint Service Review Activity Action[,]'" which Lt. Col. Oakley had himself prepared.  (Oakley Decl. ¶ 10.)

records upon receipt of Rodriguez's FOIA letters, and instead conducted myriad "mini"

quests related to different aspects of the records at issue in Rodriguez's case over an

extended period of time.  FOIA clearly contemplates that an agency will undertake a

focused search for records in response to a particular request for documents, *see*

*Campbell*, 164 F.3d at 28, but the affidavit here indicates that Lt. Col. Oakley primarily

cobbled together the results of various document reviews that he had previously

undertaken (by request) in a different context.  Therefore, far from demonstrating

adequacy, Oakley's sworn statement strongly suggests that DOD failed to undertake any

diligent or targeted search for records at all.  *Cf. Defs. of Wildlife v. U.S. Dep't of*

*Agric.*, 311 F. Supp. 2d at 55 (concluding that, "[w]ith regard to the defendants' search

of the Under Secretary['s] . . . office, the bare assertion that the Deputy Under

Secretary saw the FOIA request and that he stated that he had no responsive documents

is inadequate because it does not indicate that he performed *any search at all*."

(emphasis added)).

The Court also notes that Lt. Col. Oakley's descriptions of his search methods

(such as they are) are lacking in several respects.  For example, although Oakley says

that he searched his own individual email records and that of the Director of the Office

of Legal Policy in response to Rodriguez's FOIA requests, and provides the search

terms he used to conduct *that* search (*see* Oakley Decl. ¶ 8), he omits the search terms

that he purportedly used to search *other* computer files or non-email electronic records,

as well as the specific databases that he searched in that regard (*see, e.g.*, *id.* ¶ 7

(stating broadly that Oakley "personally conducted a search of the Office of Legal

Policy's . . . electronic share drive files").)  The affidavit also fails to divulge the

approach that Oakley used to conduct manual searches of the *physical* files.  (*See, e.g.*, *id.* ¶ 4 (asserting generally that "all responsive records" were located "through a manual search of the physical files[,]" without identifying which files were reviewed and/or explaining how this manual search was conducted).)  The affidavit does explain that "[a]ll official correspondence and records are maintained in filing cabinets located in the [Office of Legal Policy] and computer/electronic files located on the Legal Policy share drive."  (*Id.* ¶ 4.)  But references to the general location of requested records are not enough, because to demonstrate that the search methodology was adequate, an agency's affiant must explain in reasonable detail "*how* [a] search was conducted" and set "forth [both] the search terms and the type of search performed[.]"  *Oglesby*, 920 F.2d at 68 (emphasis added).

It also appears that the key terms that Lt. Col. Oakley used to search for emails in response to Rodriguez's FOIA request may well have been too restrictive to uncover all responsive records in DOD's possession.  For example, Lt. Col. Oakley declares that, on two different dates, he conducted the same email "search[] using the key terms 'LTC Rodriguez,' 'Military Whistleblower Reprisal', 'MWPA,' and 'Appeal[.]'"  (*Id.* ¶ 8.)  An electronic-records search that uses only these terms would not necessarily unearth an email in which Plaintiff is referred to as "Mr. Rodriguez," "Robert Rodriguez," or plainly as "Rodriguez."  And if the search was constructed in the conjunctive—such that *all* of these terms were required to be present in the particular record—the search would fail to yield emails that include only *some* of the terms employed (e.g., records that mention the term "LTC Rodriguez" and "MWPA" but not "Military Whistleblower Reprisal").

The fact that three out of the four key search terms that Lt. Col. Oakley purportedly used appear nowhere on the face of Plaintiff's request (*see* FOIA Request 14-F-0013 at 2) is also evidence that the search terms he employed were not reasonably calculated to uncover all responsive documents. *See Maynard v. C.I.A.*, 986 F.2d 547, 559–60 (1st Cir. 1993). And, indeed, Rodriguez has highlighted at least one e-mail communication that "related to the same subject matter" as his FOIA request, but was overlooked because of the highly-detailed terms Oakley used and the combination of all of the mandatory terms in a single search. (May 19, 2016 Hr'g Tr. at 31; *see also id.* at 30–31, 43–44 (presenting the Court and Defendant with an intra-agency email allegedly from Oakley that includes two of the four key terms on its subject-line ("MWPA" and "Appeal"), as well as the word "Rodriguez" in the body, but was not produced in response to the FOIA requests).) And while "a search is not unreasonable simply because it fails to produce all relevant material[,]" *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C. Cir. 1986), it is not appropriate to grant summary judgment in favor of the agency "if a review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,'" *Valencia–Lucena*, 180 F.3d at 326 (quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

In the absence of a declaration that clearly answers obvious questions about *how* Lt. Col. Oakley conducted the physical and electronic search in response to Rodriguez's two FOIA requests (i.e., Did he pull and manually review each and every physical file or only those with relevant labels? Did he use the same set of key words to locate all types of electronic files?), this Court has serious doubts about the reasonableness of the

search methods employed. *See, e.g.*, *Stevens v. U.S. Dep't of State*, No. 13-5152, 2015 WL 1744131, at *3 (N.D. Ill. Apr. 14, 2015) (finding that the agency's search was unreasonable because it only used the subject's full name as a key term, as opposed to just his last name, which "the Court consider[ed] to be the most obvious search term"); *see also Vietnam Veterans of Am. Connecticut Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 217 (D. Conn. 2014) (noting that the search terms seemed "too narrow" because "potentially relevant documents may not have been retrieved by the search[,]" and thus, the agency could not establish adequacy without an affidavit declaring that such "search terms would capture all responsive documents or stat[ing] why they would"). Consequently, the Court cannot conclude that it is appropriate to grant summary judgment in the government's favor with respect to the adequacy-of-the-search issue.

## IV.     CONCLUSION

The scope of the search that DOD conducted in response to Rodriguez's FOIA requests was unreasonably limited (*see supra* Part III.A), and the agency has failed to demonstrate that the methodology it employed to conduct the search was reasonably calculated to uncover all responsive documents (*see supra* Part III.B). As a result, Plaintiff is entitled to partial summary judgment with respect to his claims that the agency has conducted an inadequate search for records pursuant to his FOIA requests. *See, e.g.*, *Defs. of Wildlife v. U.S. Dep't of Agric.*, 311 F. Supp. 2d at 50; *Judicial Watch Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28, 44–46 (D.D.C. 1998). Moreover, as a practical matter, DOD's records search will have to be redone. *See, e.g.*, *Conservation Force*, 979 F. Supp. 2d at 103.

Therefore, as set forth in the Order accompanying this Opinion, Defendant's motion for summary judgment is **DENIED**, and Plaintiff's cross-motion for summary judgment is **GRANTED IN PART and DENIED IN PART**.  Plaintiff's motion is granted with respect to the adequacy of the agency's search, and DOD will have until May 9, 2017, to conduct a new search for responsive documents that is adequate in scope, manner, and location, and to produce any additional responsive records to Plaintiff.  Plaintiff's cross-motion for summary judgment is denied without prejudice with respect to DOD's application of FOIA Exemptions 5 and 6.  Plaintiff may contest these and any other allegedly improper withholdings in the context of the summary judgment arguments that the parties make with respect to the agency's new search and complete production of responsive records.

DATE:  February 15, 2017

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge